Opinion issued April 3, 2008

















     

In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00740-CV




HARRIS COUNTY APPRAISAL DISTRICT, Appellant

V.

SIGMOR CORPORATION; BRAZOS RIVER LEASING, L.P.; DIAMOND
SHAMROCK STATIONS, INC.; DIAMOND SHAMROCK REFINING AND
MARKETING COMPANY, LESSEE; SIGMOR NUMBER 178, INC.;
SIGMOR NUMBER 196, INC.; BIG DIAMOND, INC.; TOC-DS
COMPANY; BIG DIAMOND NUMBER 1, INC.; STOP ‘N’ GO MARKETS
OF TEXAS, INC.; COCHRAN STREUSAND INTERESTS; TOC-DS
COMPANY, LESSEE; AUTOTRONICS SYSTEMS, INC.; DIAMOND
SHAMROCK REFINING AND MARKETING COMPANY; NATIONAL
CONVENIENCE STORES INCORPORATED; METROPOLITAN LIFE
INSURANCE COMPANY; AND NATIONAL CONVENIENCE STORES,
INCORPORATED, LESSEE, Appellees




On Appeal from the 11th District Court
Harris County, Texas
Trial Court Cause No. 2003-51993




MEMORANDUM OPINION

          This is a dispute over the valuation of business personal property for ad
valorem taxation. Harris County Appraisal District (“HCAD”) appeals the trial
court’s judgment in favor of the property owners, Sigmor Corporation; Brazos River
Leasing, L.P.; Diamond Shamrock Stations, Inc.; Diamond Shamrock Refining and
Marketing Company, Lessee; Sigmor Number 178, Inc.; Sigmor Number 196, Inc.;
Big Diamond, Inc.; TOC-DS Company; Big Diamond Number 1, Inc.; Stop ‘N’ Go
Markets of Texas, Inc.; Cochran Streusand Interests; TOC-DS Company, Lessee;
Autotronics Systems, Inc.; Diamond Shamrock Refining and Marketing Company;
National Convenience Stores Incorporated; Metropolitan Life Insurance Company;
and National Convenience Stores, Incorporated, Lessee (collectively, “Valero”


)
concerning the valuation of furniture, fixtures, and equipment (“FF&E”) in 14 of
Valero’s convenience stores. 
 
          In two issues, HCAD contends that the trial court erred by (1) denying its
motion to exclude the testimony of Valero’s expert witness on appraisal and (2)
denying its motion for judgment notwithstanding the verdict because the jury’s
valuation findings were not supported by legally sufficient evidence.
          We reverse and render judgment that Valero take nothing on its claims.
FACTS AND PROCEDURAL HISTORYThe business personal property (inventory and FF&E) in each of Valero’s
convenience stores is subject to ad valorem taxation, which HCAD assesses
annually.


 Each year, Valero is required to submit to HCAD a rendition


 of the
inventory and FF&E in each of its stores. The FF&E in each of the 14 Valero stores
at issue in this appeal generally includes items such as hot-dog rollers, coffee
machines, microwave ovens, soft drink dispensers, shelving and gondolas for product
display, cash registers, walk-in coolers, outdoor signs, and, significantly, underground
fuel storage tanks (“USTs”).


 
 
          In April 2003, according to HCAD, Valero filed its rendition in a form other
than that required by HCAD, and Valero failed to include certain information—such
as the age, condition, replacement status, and other characteristics affecting the
market value of the FF&E. Consequently, HCAD performed its appraisal by
estimating the extent, quantity, and condition of Valero’s business personal property. 
          Subsequently, Valero administratively protested HCAD’s valuation of Valero’s
business personal property for the stores at issue herein through the Harris County
Appraisal Review Board. After exhausting its administrative remedies without
success, Valero sought de novo review in the trial court, claiming that HCAD’s 2003
valuation of Valero’s business personal property was unequal to that of comparable
properties and was in excess of its market value. The trial court granted a directed
verdict on the unequal appraisal claim in favor of HCAD, and the jury found in favor
of HCAD on the valuation of Valero’s inventory. HCAD appeals the jury’s finding
in favor of Valero on the valuation of Valero’s FF&E.
          The parties do not dispute that Valero’s land and improvements are appraised
separately from its FF&E and that the valuation of Valero’s FF&E is governed by
Texas Tax Code section 1.04(7). See Tex. Tax Code Ann. § 1.04(7) (Vernon Supp.
2007). Section 1.04(7) provides, generally, that “‘[m]arket value’ means the price at
which a property would transfer for cash or its equivalent under prevailing market
conditions [if certain other conditions are met].” See id. (emphasis added). The
parties dispute the meaning of the word “transfer” as used in the statute. See id.
          At trial, Valero presented its vice-president of property tax, Roy Martin, who
testified that, by its nature, FF&E is tangible, moveable property, and that, as such,
its market value necessarily contemplates an actual physical “transfer” of the
property—standing apart and alone from the going concern—from the seller to the
buyer. Martin explained that a particular piece of equipment, such as a hot dog roller,
has different market value depending upon whether it is sold by itself or as a part of
the sale of an entire business operation. In the latter instance, the hot dog roller has
higher market value because it has inherent use value as an integral part of the
business enterprise, and this intangible inherent use value is not to be considered in
the valuation of business personal property for taxation purposes.
          In addition, Valero presented the testimony and reports of its expert witness on
appraisal, John J. Connolly, III, of Nationwide Consulting, Inc. Connolly testified
that the market value of Valero’s FF&E is its value “in exchange”—that is, its value
in an actual physical transfer between a willing seller and willing buyer. In
developing his valuation, Connolly visited 200 Valero stores, which were considered
to be representative of the 14 at issue herein, and compared the items in the stores
against Valero’s asset listing. 
          Connolly applied a market approach to his valuation but was unable to locate
any actual sales data of like items of FF&E. In place of actual sales data, Connolly
identified used equipment dealers as the relevant market for Valero’s FF&E.
Connolly investigated the published resources and internet cites of used equipment
dealers to determine the price at which the dealers offered like items for resale, and,
based on additional information obtained from talking with the dealers, Connolly
discounted the price of each item to reflect the dealer’s mark-up on the item. In
arriving at the final market value of each item, Connolly took into account applicable
removal costs.
          For instance, in valuing the USTs, Connolly testified that the original cost of
a tank, installed, would range from $75,000 to $100,000. Connolly assigned a market
value of only $100 for each tank, however, because, he opined, the costs to excavate
a UST from the ground and the existence of certain laws prohibiting a purchaser from
reusing the tank for gasoline storage rendered the tank valueless or solely fit as
salvage materials. Connolly testified that the tax code did not require him to take into
account the value of the going business enterprise in valuing the USTs.
          HCAD objected to and moved to exclude Connolly’s testimony on the grounds
that it was neither relevant nor reliable. HCAD contended that Connolly improperly
failed to appraise the FF&E “as is, in place” and instead appraised each item under
a “hypothetical premise” that it was to be dismantled, removed, and liquidated. 
HCAD complained that Connolly artificially devalued the FF&E by disregarding its
“highest and best use”—which was as “in place” and “in use” as part of a
convenience store—and by applying subjective deductions from the data he selected. 
In addition, HCAD contended that Connolly chose the wrong level of trade, that of
“selling down the organizational chart of commerce to dealers or brokers, as if they
were the only buyers.” HCAD complained that Connolly failed to present any sales
data and failed to consider Valero’s own business experience.
          As to the USTs, which represented the greatest deviation in the parties’
valuation of Valero’s FF&E, HCAD contended that Connolly’s devaluation amounted
to a virtual tax exemption for Valero. HCAD presented the testimony of its expert
witness on appraisal, Lee Robinette, who opined that Valero’s FF&E, including the
USTs, must be valued “as it is, where it is, with the parts in place.” Robinette applied
a cost and income approach to his valuation. Robinette also testified that consulting
internet sources to determine the fair market value of FF&E is “consistent with
generally accepted techniques in [his] field of appraising.” 
          Donald Landry, HCAD’s director of appraisal, testified that there is not a
difference between value “in use” and value “in exchange.” Landry testified that the
valuation of business personal property involves taking the information that business
owners supply on the detailed rendition form and applying certain calculation
guidelines. Grady Graham, an HCAD appraiser in charge of HCAD’s automated
calculation program, testified that he did not have any previous experience with the
valuation of the type of business equipment at issue in this suit, but that obtaining
values from the internet, dealers, and published guides to determine market value was
a generally accepted practice. 
          The trial court denied HCAD’s motions to exclude Connolly and overruled
HCAD’s objections to Connolly’s testimony. 
          The parties’ offered conflicting valuations of the FF&E in each of Valero’s
stores, which are fully laid out below. The jury’s valuation findings, which were
below those offered by Connolly, are also laid out below.
          Contending that the jury had necessarily relied on erroneous valuations by
Connolly and that the jury had further devalued the property below Connolly’s
assessment without evidentiary support, HCAD moved for judgment notwithstanding
the verdict (“JNOV”). The trial court denied HCAD’s motion and entered judgment
on the verdict, and this appeal ensued.
Judgment Notwithstanding the Verdict
          In its second issue, HCAD contends that the trial court erred by refusing to
grant its motion for JNOV on the ground that the jury’s valuation findings in question
one of the charge are not supported by legally sufficient evidence. 
A.      Standard of Review
          A trial court may disregard a jury finding and enter a JNOV if the finding is
immaterial or if there is no evidence to support the finding. Tiller v. McClure, 121
S.W.3d 709, 713 (Tex. 2003); Spencer v. Eagle Star Ins. Co. of Am., 876 S.W.2d 154,
157 (Tex. 1994); Williams v. Briscoe, 137 S.W.3d 120, 124 (Tex. App.—Houston
[1st Dist.] 2004, no pet.). We review the denial of HCAD’s motion under a legal
sufficiency standard. See Brown v. Bank of Galveston, 963 S.W.2d 511, 513 (Tex.
1998); CDB Software, Inc. v. Kroll, 992 S.W.2d 31, 35 (Tex. App.—Houston [1st
Dist.] 1998, pet. denied). We view the evidence and inferences in the light most
favorable to the jury’s finding. City of Keller v. Wilson, 168 S.W.3d 802, 807 (Tex.
2005). A JNOV should be entered on “no evidence” when the evidence offered to
prove a vital fact is no more than a scintilla. Id. at 810. An inference that is stacked
only upon other inferences, rather than direct evidence, is not legally sufficient
evidence. See Marathon Corp. v. Pitzner, 106 S.W.3d 724, 728 (Tex. 2003).
B.      Applicable Law
          Generally, FF&E is appraised at its market value as of January 1 of the tax year
at issue. Tex. Tax. Code Ann. § 23.01(a) (Vernon 2001). The Tax Code defines
“market value” as the price at which property would transfer for cash or its equivalent
under prevailing market conditions if:
          (A)    exposed for sale in the open market with a reasonable time for the
seller to find a purchaser;
          (B)    both the seller and the purchaser know of all the uses and
purposes to which the property is adapted and for which it is
capable of being used and of the enforceable restrictions on its
use; and 
          (C)    both the seller and the purchaser seek to maximize their gains and
neither is in a position to take advantage of the exigencies of the
other.

 
Tex. Tax Code Ann. § 1.04(7). 

          Pursuant to section 23.01 of the Tax Code, 

[t]he market value of property shall be determined by the application of
generally accepted appraisal methods and techniques. . . . The same or
similar appraisal methods and techniques shall be used in appraising the
same or similar kinds of property. However, each property shall be
appraised based upon the individual characteristics that affect the
property’s market value.

 
Tex. Tax. Code Ann. § 23.01(b) (Vernon 2001). 

C.      Analysis

          The record shows that Valero presented the testimony of its expert, Connolly,
as its evidence of the valuation of its FF&E. However, as HCAD contends, even if
we were to consider Connolly’s testimony relevant and reliable,


 such evidence would
not support the jury’s valuations because the valuations are substantially below
Connolly’s. 

          In question number one of the charge, the jury was asked to find the market
value of the FF&E in each store, as of January 1, 2003, based on the language at Tax
Code section 1.04(7). See Tex. Tax Code Ann. § 1.04(7). 

          The parties’ conflicting valuations and the jury’s findings are summarized as
follows:




Store

HCAD’s Value

Connolly’s Value

Jury Finding



178

$175,595.00

$20,000.00

$12,000.00



196

$101,850.00

$24,500.00

$16,600.00



295

$96,385.00

$17,200.00

$9,900.00



527

$53,580.00

$20,400.00

$10,400.00



528

$84,725.00

$16,100.00

$7,000.00



565

$56,350.00

$30,100.00

$20,600.00



713

$79,265.00

$17,100.00

$8,300.00



934

$84,605.00

$21,100.00

$13,500.00



1404

$95,575.00

$27,200.00

$18,300.00



1405

$110,190.00

$15,300.00

$6,500.00



1413

$127,335.00

$22,000.00

$12,900.00



1416

$127,410.00

$30,700.00

$18,200.00



1419

$215,115.00

$24,900.00

$16,200.00



2007

$90,115.00

$24,200.00

$16,300.00




          The record reflects that the jury’s valuation findings lie outside the range of
values given by the experts. The only other evidence in the record of the valuation
of Valero’s FF&E is the “Liquidation Appraisal” of Joe Presswood. Not only does the
report solely consider store 196, but Martin testified that the report is incomplete. 
Significantly, the report does not include any valuation of the gas pumps, gas
equipment, or USTs.
          Valero contends that this issue has been waived because HCAD failed to raise
it in a motion for new trial. A no-evidence point may be preserved by a motion for
judgment notwithstanding the verdict, an objection to submitting an issue to the jury,
a motion to disregard a jury finding on an issue, or a motion for new trial. See C.M.
Asfahl Agency v. Tensor, Inc., 135 S.W.3d 768, 786–87 (Tex. App.—Houston [1st
Dist.] 2004, no pet.) (citing Cecil v. Smith, 804 S.W.2d 509, 511 (Tex. 1991)); see
also Tex. R. Civ. P. 324 (requiring motion for new trial to preserve certain factual
issues). Here, HCAD preserved its challenge in its post-verdict motion for judgment
notwithstanding the verdict, in which it contended that there was no evidence to
support the jury’s valuation in question number one of the charge.
          As HCAD contends, although jurors are not bound by an expert witness’s
testimony, they cannot arbitrarily find an amount not supported by the evidence and
“pull figures out of a hat.” First State Bank v. Keilman, 851 S.W.2d 914, 931 (Tex.
App.—Austin 1993, writ denied). The jury has the discretion to award damages
within the range of values put in evidence by the experts, but jurors cannot “leap
entirely outside of the evidence.” Callejo v. Brazos Elec. Power Coop., 755 S.W.2d
73, 75 (Tex. 1988). An answer cannot be upheld when it has no support in the
evidence. Id. at 75–76.
          We conclude that the trial court erred by denying HCAD’s motion for JNOV,
solely as to the jury’s answer to question number one, the valuation of the FF&E in
each of Valero’s 14 convenience stores.
          Accordingly, HCAD’s second issue is sustained.
CONCLUSION
          Having found HCAD’s second issue dispositive, we do not reach its first. We
reverse the judgment of the trial court and render judgment that Valero take nothing
by its claims.
 
 
                                                             Laura Carter Higley 
                                                             Justice
 
Panel consists of Justices Nuchia, Hanks, and Higley.